**William H. JORDAN, Appellant,**

v.

**WORLD PUBLISHING COMPANY and Newspaper Printing Corporation, Appellees.**

**No. 80,475.**

Court of Appeals of Oklahoma, Division No. 4.

Feb. 22, 1994.

Bill V. Wilkinson, Robyn R. Sanzalone, Wilkinson & Monaghan, Tulsa, for appellant.

J. Schaad Titus, Edwin S. Hurst, Boone, Smith, Davis, Hurst & Dickman, Tulsa, for appellees.

*MEMORANDUM OPINION*

STUBBLEFIELD, Judge.

This is an appeal from dismissal of plaintiff's cause of action for "negligent publication." After a review of the record on appeal and applicable law, we affirm.

Plaintiff William H. Jordan, principal of a Tulsa Public Schools middle school, brought this lawsuit against Defendants World Publishing Company and Newspaper Printing Corporation to recover damages purportedly resulting from publication in the Tulsa World newspaper of a "letter to the editor" falsely

attributed to him. The letter, which was on Tulsa Public School stationary and enclosed in a Tulsa Public School envelope, condemned "black looters, rioters, and killers in Los Angeles" and called for the teaching by parents of positive values to their children. The letter bore Plaintiff's name, both typed at the bottom and signed. However, Plaintiff claims that he did not write the letter and that the newspaper was negligent in failing to follow its own policies that had been adopted to insure that false or fake letters were not published. He sought damages for negligent injury to his reputation and for negligent infliction of emotional distress.

Defendants moved to dismiss the petition for failure to state a claim. They asserted that Plaintiff's only allegations were of their purported negligence and that as a matter of law a public figure must plead actual malice to recover for any injury resulting from a newspaper publication.

The trial court sustained the motion but granted Plaintiff twenty days in which to amend his petition. However, Plaintiff did not amend but commenced this appeal. The trial court thereafter dismissed Plaintiff's petition "with prejudice" and Plaintiff amended his appeal to include the final order of dismissal. The supreme court denied Defendants' motion to retain, and we now address Plaintiff's appeal.

The sole issue for determination is whether Plaintiff pleaded a cognizable claim against a newspaper where the wrong complained of was publication of a letter wrongly attributed to him, a public figure, but where no malice was alleged. On appeal Plaintiff attempts to maintain that malice could have been inferred from the alleged conduct of Defendants, but we reject that claim. Plaintiff's petition plainly failed to allege malice, and Plaintiff elected *not* to amend his petition to include such an allegation. Thus, he stood entirely upon his cause of action grounded in negligence.

■ A party may not declare that only a certain question is involved in a case, and then attempt to raise other questions in the appellate court. *McMillan v. Lane Wood & Co.*, 361 P.2d 487 (Okla.1961). Furthermore, it is a longstanding rule that error argued in briefs but not set forth in the petition in error will not be considered on appeal. *Barber v. Flynn*, 628 P.2d 1151 (Okla.1980). In his amended petition in error, Plaintiff listed five "issues to be raised." Those issues all deal with Plaintiff's right to pursue a negligence action and do not address the sufficiency of the facts alleged to indicate malice. Therefore, we shall address only Plaintiff's contentions regarding the legal propriety of his causes of action founded in negligence.

■ Plaintiff cites *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), to support his proposition that his petition *"must not* be dismissed for failure to state a legally cognizable claim for relief unless it can be determined that as a matter of law he cannot prove any set of facts that would warrant relief in his favor." He contends that he had pleaded the elements of negligence—existence of a duty owed by Defendants to Plaintiff, a breach of that duty, and an injury to himself proximately flowing from that breach. He maintains that Defendants had a duty to follow their established procedures to verify the authenticity of letters before publication; Defendants breached this duty; and, as a result, his reputation was damaged and he suffered considerable emotional distress, shame and disgrace.

Defendants, however, assert that any alleged damages of Plaintiff arose from the act of publication in a newspaper and that any claims of Plaintiff are subject to the First Amendment freedom of speech limitations. Thus, Defendants urge that Plaintiff's cause of action is not defined by labels applied to a set of factual allegations but by the very nature of the assertions and the relief requested. They contend that the nature of the action is one in libel, or false light invasion of privacy, both of which require a finding of malice before a newspaper can be held liable in damages to a public figure.

■ Plaintiff does not dispute that he is a "public figure." *Johnston v. Corinthian Television Corp.*, 583 P.2d 1101 (Okla.1978); *Luper v. Black Dispatch Publishing Co.*, 675 P.2d 1028 (Okla.Ct.App.1984). Thus, in a libel action brought by him, there is a constitutional requirement that he plead actual

malice, defined as knowledge of or reckless disregard for the truth of falsity of an assertion. *See New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Miskovsky v. Oklahoma Publishing Co.,* 654 P.2d 587 (Okla.1982), *cert. denied* 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982); *Jurkowski v. Crawley,* 637 P.2d 56 (Okla. 1981). Likewise, the court in *Colbert v. World Publishing Co.,* 747 P.2d 286 (Okla. 1987), held a plaintiff in false light privacy cases must plead and prove actual malice.

Accepting as true Plaintiff's allegations that Defendants had established procedures for verifying the authenticity of letters before publication and failed to follow those procedures in this instance, we still cannot escape the conclusion that it was the publication of the letter—rather than failure to follow procedures—that caused Plaintiff's alleged damages.

The *facts* herein are quite similar to those in *Decker v. Princeton Packet,* 116 N.J. 418, 561 A.2d 1122 (1989), a case cited by Defendants, in which a false obituary was published. The newspaper had a procedure to verify death information received by calling the source from which the information purportedly came. However, during the absence of the person who was normally in charge of obituaries, an unsigned, unverified obituary was left in the newspaper's press release box and was published without verification. The death notice was not correct, and the named decedent sued to recover for libel, negligent infliction of emotional distress, intentional infliction of emotional distress and gross negligence. Citing *Hustler Magazine v. Jerry Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988); *Apostle v. Booth Newspapers, Inc.,* 572 F.Supp. 897 (W.D.Mich.1983), the *Decker* court stated that "the first amendment requires that plaintiff establish at least the same level of intent to recover for the infliction of emotional harm as is necessary to find defamation." 561 A.2d at 1129. The court further stated:

> If the levels of culpability were not at least as stringent, plaintiffs would be able to use the tort of negligent infliction of emotional distress to overcome defenses to defamation actions, to avoid short statutes of limitations for defamation, and to circumvent judicial barriers to punitive damages. There is, in other words, a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results. . . . (Citations omitted.)

*Id.*

Justice Black in his concurring opinion in *New York Times Co. v. Sullivan,* 376 U.S. 254, 294, 84 S.Ct. 710, 733–34, 11 L.Ed.2d 686 (1964), expressed the importance of protecting newspapers' First Amendment rights: "The half-million-dollar verdict does give dramatic proof . . . that state libel laws threaten the very existence of an American press virile enough to publish unpopular views on public affairs and bold enough to criticize the conduct of public officials."

Newspapers, by their very nature, must generally publish information obtained from second-hand sources. Such information certainly may be erroneous. But to protect a free press and its important function in our society, the law has shielded the press from liability for simple error or mistake in publication. Such a shield would be meaningless if it could be circumvented merely by labelling a lawsuit as a negligence action rather than one for libel.

We find the rationale expressed in *Decker* to be harmonious with that expressed by Justice Black and the court in *Sullivan,* and is persuasive herein. Plaintiff attempted to couch a libel or false light invasion of privacy claim in negligence terms to overcome his admitted "insurmountable" burden of proving actual malice. However, the alleged "wrong" was publication of a false letter, and as to injuries flowing from publication regarding a public figure, Defendants are protected by the law and may not be held liable absent some allegation and proof of actual malice. Plaintiff wholly failed to make such allegations and, thus, did not state a proper claim for recovery. Accordingly, we find no error in the lower court's dismissal.

AFFIRMED.

TAYLOR, P.J., and BRIGHTMIRE, J., concur.